# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **TERESA GORSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:09-CV-350** |
| | ) | |
| **THE MEDICAL PROTECTIVE COMPANY,** | ) | |
| **ERIC CLARK, SUNDANCE TENNANT, and** | ) | |
| **KIMBERLY KEM,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Teresa Gorski brings this action against her former employer, The Medical

Protective Company, and several of its managers (collectively referred to herein as "Medical

Protective"), asserting that they wrongfully denied her substantive benefits of the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*., and then retaliated against her by

terminating her employment. (Docket # 1.)

On August 19, 2010, Medical Protective moved for summary judgment on Gorski's

claims. (Docket # 20.)  Gorski filed a response on September 21, 2010 (Docket # 23-25), and

Medical Protective replied on October 8, 2010 (Docket # 26.)  Together with its reply, Medical

Protective filed a motion to strike the affidavit that Gorski submitted in opposition to summary

judgment. (Docket # 27, 28.)  Gorski has not responded to the motion to strike, and the time to

do so has since passed.

Because Gorski's opposition to the motion for summary judgment relies upon evidence

subject to Medical Protective's motion to strike, the Court will first turn to that motion.  For the following reasons, Medical Protective's motion to strike will be GRANTED IN PART and DENIED IN PART, and its motion for summary judgment will be GRANTED.

## II.  MOTION TO STRIKE

### A.  Applicable Law

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).  "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-cv-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id.*; *see also Stromsen v. Alumna Shield Indus., Inc.*, No. 89-C5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2738 (3d ed. 2006).  Specifically, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682

(7th Cir. 1999); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); (5) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999), and (6) statements or conclusions that "contradict prior deposition or other sworn testimony", without explaining the contradiction or attempting to resolve the disparity, *see Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (collecting cases); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985).

## B. Discussion

As a threshold matter, Gorski's failure to respond to Medical Protective's motion to strike exposes her to a "summary ruling" pursuant to Local Rule 7.1(a). *See* N.D. Ind. L.R. 7.1(a) ("Failure to file a response or reply within the time prescribed may subject the motion to summary ruling."); *Taylor v. Lifetouch Nat'l Sch. Studios, Inc.*, 490 F. Supp. 2d 944, 950 (N.D. Ind. 2007) (granting the defendant's motion to strike because the plaintiff failed to respond); *Hardiman v. Davita, Inc.*, No. 2:05-CV-262-JM, 2007 WL 1395568, at *9 (N.D. Ind. May 10, 2007) (same). Nonetheless, the Court will proceed to examine Medical Protective's motion on the merits.

Paragraph 8. In this paragraph, Gorski asserts that Medical Protective experienced "materially lower productivity and increased complaints" after her termination. Paragraph 8 is stricken for lack of personal knowledge, as Gorski has not demonstrated how she would have personal knowledge of Medical Protective's business after her termination. *See DeLuca v. Winer Indus., Inc.*, 53 F.3d 798, 798 n.5 (7th Cir. 1995) ("Because [plaintiff] failed to explain his basis of personal knowledge of these events, . . . we do not consider his descriptions of them.").

Paragraph 11.  Here, Gorski characterizes her performance review as "positive".  While this term is arguably self-serving and conclusory, rather than factual, *see Toro Co.*, 827 F.2d at 162 n.3, the Court will nevertheless allow it since it reflects Gorski's "own thoughts or intentions [about her performance], which are within [her] personal knowledge." *McKay v. Town & Country Cadillac, Inc.*, No. 97 C 2102, 2002 WL 531356, at *7 (N.D. Ill. Apr. 9, 2002) (emphasis omitted).

Paragraph 12.  In this paragraph, Gorski proclaims that Defendant Sundance Tennant's August 26, 2009, feedback communication was "without foundation and false" and then speculates about Tennant's motive for the communication.  However, "conjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion", *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998), and thus this paragraph is stricken in its entirety. *See also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001) ("'[S]tatements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant' to an inquiry of discrimination."); *O'Brien v. Diversified Transp., Inc.*, No. 3:04-CV-791 RM, 2006 WL 3191560, at *3 (N.D. Ind. Nov. 1, 2006) (quoting *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997) (striking affiant's opinion statements about the employer's motivations where the statements contain no explanation for the basis for his knowledge).

Paragraph 13.  This paragraph is also stricken, as Gorski conclusorily refers to her "high-level of productivity" and speculates that Defendant Clark "was having trouble with coping with losing" her and "had to hire three people to replace her."  Conclusory assertions are insufficient, *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998), and Gorski has not shown

4

that she has personal knowledge of any statements Clark made after her termination, *DeLuca*, 53 F.3d at 798 n.5.

Paragraph 16.  Medical Protective again seeks to strike Gorski's characterization of a Medical Protective audit report as "positive".  For the reasons articulated with respect to paragraph 10, the term will be allowed.

Paragraph 18.  Here, Gorski states that she was "severely injured" when falling from a ladder.  Medical Protective argues that the term "severely" is more of a conclusory allegation, than a fact. *Toro*, 827 F.2d at 162 n.3.  Again, the Court will refrain from striking it since it reflects Gorski's "own thoughts" . . . [about her injury], which are within [her] personal knowledge." *McKay*, 2002 WL 531356, at *7.

Paragraph 19.  Medical Protective reiterates its argument regarding paragraph 18 with respect to Gorski's reference in this paragraph to "severe contusions".  For the reasons articulated with respect to paragraph 18, the term "severe" will not be stricken.  Medical Protective also challenges Gorski's statement that on September 8, she requested to leave work to see a doctor "after arriving at her employment", asserting that it contradicts her deposition stating that she did not ask to leave work until two-and-one-half hours after arriving at work. Contrary to Medical Protective's assertion, Gorski's affidavit statement is not necessarily inconsistent with her deposition testimony, and thus it will be allowed.

In addition, Medical Protective seeks to strike Gorski's statement that she "believed she could not perform her work duties" on September 8, asserting that it is conclusory and inappropriately based on her "information and belief".  Nevertheless, the Court will refrain from striking it since it reflects Gorski's "own thoughts" . . . [about her work performance], which are

within [her] personal knowledge." *McKay*, 2002 WL 531356, at *7 (emphasis omitted).

Paragraph 20. In this paragraph, Gorski alleges that Defendant Tennant "refused" her request to leave to go to the doctor on September 8. She also states that Defendants Tennant and Clark "denied" her request again later in the day when she "was told that she needed to stay and perform her employment functions without leaving." This paragraph is stricken as it contradicts Gorski's deposition testimony, *Buckner*, 75 F.3d at 292, stating that (1) Tennant told her that they were shorthanded that day and asked her if she could schedule the doctor visit for after work or another time (Gorski Dep. 66), and that (2) Clark never told her she could not leave but instead said, "Well, if you have to go, you have to go." (Gorski Dep. 71-72.)

Paragraph 21. This paragraph, which states that Gorski "was further ordered at that time to consult with Tennant and Clark about availability to see her doctor on Tuesday after hours or another day", is stricken because it contradicts her deposition testimony. *Buckner*, 75 F.3d at 292. Gorski stated in her deposition that Tennant asked her to call her doctor before her meeting with Clark to see what appointment times were available, which she did not do, and that she contacted her doctor after the meeting and set an appointment for the next day. (Gorski Dep. 69-70, 77-78.)

Paragraph 22. Gorski states in this paragraph that on September 9 Tennant informed her after she had returned from her doctor appointment "that she had to work all day and that the leave issue would be approached in the afternoon." This sentence is stricken because it contradicts Gorski's deposition testimony. *Buckner*, 75 F.3d at 292. Gorski stated in her deposition that when she returned to work after her doctor appointment, she reported what her doctor had said to Tennant, and Tennant simply responded, "That was fine." (Gorski Dep. 86-

87.)

Paragraph 23. Gorski refers twice in this paragraph to her "serious health condition". Whether a plaintiff suffers from a "serious health condition" under the FMLA is a legal conclusion, and it is well settled that a witness is not permitted to testify to legal conclusions. *See United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000) ("Witnesses testify about fact, not law."); *Pfeil*, 757 F.2d at 862 ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.").

In any event, this paragraph is stricken in its entirety because it contradicts Gorski's deposition testimony. *Buckner*, 75 F.3d at 292. In her affidavit, Gorski asserts that she discussed her "serious health condition with Clark in his office and displayed her contusions to him." However, in her deposition, Gorski testified: "[T]he only thing [Clark] said to me in his office was that we needed to go over to Kim Kem's office." (Gorski Dep. 87.)

Paragraph 24. Gorski's reference to a "serious health condition" in this paragraph is stricken for the reasons articulated with respect to paragraph 23.

Paragraph 26. Here, Gorski states that "[a]t no time prior to this termination on Wednesday, September 9, 2009, had it ever been indicated to [her] that things were not working out, that her performance was deficient and that there was no position available to her." The phrase "that her performance was not deficient" is stricken, as it directly contradicts her deposition testimony acknowledging that performance deficiencies were documented in her 2007 and 2008 performance evaluations. (Gorski Dep. 46-47, 52-56, Exs. 5, 6); *Buckner*, 75 F.3d at 292.

Paragraph 27.  In this paragraph Gorski explains that she continued to work on Tuesday, September 8, after her request to go to a doctor "because of the negative expressions and communications of Tennant and Clark as to her being needed, being on the job as a necessity to Med Pro and [she] felt that if she were to utilize her available sick time, vacation time or personal time that she would be retaliated against by them."  Medical Protective seeks to strike this paragraph as speculative.  However, the Court will not strike it, as it reflects Gorski's "own thoughts or intentions [about why she stayed at work], which are within [her] personal knowledge." *McKay*, 2002 WL 531356, at *7.

Paragraph 29.  Gorski again asserts that she was never informed that her job performance was deficient.  This portion of paragraph is stricken for the reasons articulated with respect to paragraph 26.

Paragraph 30.  In this paragraph, Gorski states that "Med Pro took no action to terminate [her] until she requested FMLA leave to take care of her serious health condition."  Medical Protective seeks to strike this statement because Gorski lacks personal knowledge about its decision to terminate her, which was made before she ever experienced her September 7 injury.  It also argues that the statement contradicts her deposition, which does not reflect that she ever requested "FMLA leave", and then incorporates an impermissible legal conclusion.

Of course, Gorski's reference to a "serious health condition" is stricken for the reasons articulated in paragraph 23.  The Court, however, will allow the remainder of the sentence, as from Gorski's perspective, Medical Protective did not *effectuate* its decision to terminate her until after she was injured and requested to go to the doctor, and thus the statement is not necessarily inconsistent with her deposition.

Paragraph 31.  Gorski again claims that Clark and Tennant denied her leave on September 8.  As stated with respect to paragraph 20, this assertion contradicts her deposition and is stricken.  The second sentence of the paragraph, stating that "the angry tone and words of Clark made her believe she would be adversely affected" if she left will be allowed, as it reflects Gorski's perception or  "own thoughts" . . . [about Clark's statement], which are within [her] personal knowledge." *McKay*, 2002 WL 531356, at *7.

Paragraph 32.  Medical Protective seeks to strike Gorski's statement that she was "under continuing care" of her family physician after seeing him on September 9, arguing that it contradicts her deposition testimony.  While Gorski did indeed state at her deposition that she did not see her family physician after September 9 *for the injuries she incurred on September 7*, the Court will not strike this sentence.  Gorski may have seen her family physician for unrelated ailments, and thus might well have been under his "continuing care" for other conditions.

Paragraph 33.  In this paragraph, Gorski states that she was "referred to an orthopaedic specialist".  Medical Protective argues that this statement contradicts her deposition testimony, contending that Gorski chose to contact Orthopaedics Northeast on her own.  Medical Protective's argument is unpersuasive, as Gorski testified at her deposition that her family physician told her to "go ahead and make an appointment with [Orthopaedics Northeast] if [she] believed [she] needed further examination." (Gorski Dep. 100.)  Therefore, this paragraph will not be stricken.

Paragraph 34.  Here, Gorski states that "[s]he continued to be under family orthopaedic care within 30 days after her fall."  Medical Protective seeks to strike this statement, contending that Gorski testified at her deposition that the only follow-up care she received from the

orthopaedist for her September 7 injury was a brief examination of her bruises, neck, and back when she returned to the orthopaedist for an unrelated foot injury. (Gorski Dep. 103-04.) Since Gorski was indeed examined by her orthopaedist a second time, her statement will be allowed.

Paragraph 35. In this paragraph, Gorski states that her "performance had exceeded Med Pro's overall expectations." While this sentence is quite self-serving and conclusory, rather than factual, *Toro*, 827 F.2d at 162 n.3; *Drake*, 134 F.3d at 887, the Court will nevertheless allow it since it reflects Gorski's "own thoughts or intentions [about her performance], which are within [her] personal knowledge." *McKay*, 2002 WL 531356, at *7. Moreover, the 2008 personnel evaluation, the raise, and the bonus, could have led Gorski to this belief.

## C. Conclusion

For the foregoing reasons, Medical Protective's motion to strike Gorski's affidavit is GRANTED IN PART and DENIED IN PART in accordance with the terms set forth herein. The Court will now turn to consider Medical Protective's motion for summary judgment.

## III. FACTUAL AND PROCEDURAL BACKGROUND[1]

In December 2006, Gorski was hired as a client service representative in the dental unit of Medical Protective, a provider of malpractice insurance for medical practitioners, hospitals, and dentists. (Gorski Dep. 27-28, 31, Ex. 2; Kem Aff. ¶ 4.) Gorski's job duties included answering telephone calls from dentists regarding insurance policies, and interfacing with insurance brokers and agents who were referral sources for Medical Protective's business. (Gorski Dep. 33-34.) During the relevant time period, Defendant Sundance Tennant was

---

[1] For summary judgment purposes, the facts are recited in the light most favorable to Gorski, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Gorski's immediate supervisor, and Tennant reported to Defendant Eric Clark, the head of the dental unit. (Gorski Dep. 35, 37, 43.) Defendant Kim Kem is Medical Protective's Vice President of Human Resources. (Gorski Dep. 30-31; Kem Aff. ¶ 2.)

Gorski received annual performance reviews from Medical Protective. (Gorski Dep. 44-46, 53.) While Gorski perceived that she exceeded Medical Protective's expectations (Gorski Aff. ¶ 35), her performance review for 2007 (conducted in early 2008) stated that her performance was "adequate" from a "volume perspective" but that her professionalism and customer service skills were deficient. (Gorski Dep. Ex. 5.) The review gave several examples of Gorski's deficiencies in that arena, including her use of profanity and misuse of company time. (Gorski Dep. Ex. 5.)

Gorski's 2008 review (conducted in early 2009) generally noted improvement in her deficit areas but that she still at times spoke harshly to customers. (Gorski Dep. Ex. 6.) Indeed, Tennant and Clark received complaints about Gorski's customer service skills from customers and other employees. (Tennant Aff. ¶ 4; Clark Aff ¶ 4.) As part of her review, Medical Protective recommended that she attend a day-long seminar on interpersonal skills, which she did. (Gorski Dep. 56-58, Ex. 6.) Nevertheless, Gorski perceived her 2008 review as "positive", and she received a 4.3% raise and a bonus valued at $500. (Gorski Aff. ¶ 11, Gorski Dep. 95.)

In mid-August 2009, Clark, Tennant, and Kem began discussing plans to terminate Gorski's employment. (Clark Aff ¶ 6; Tennant Aff ¶ 5; Kem Aff. ¶ 5.) On August 19, 2009, Clark sent and email to Kem, stating:

> As indicated in our discussion today, we have decided to move on with Teresa Gorski. Sundance is preparing a performance summary to document the rationale behind the decision and should be ready by the end of next week. We would like to move forward with talking to Logan if possible . . . I think he would be very

happy on the dental team and already has relationships with a few individuals.
Please let us know how to proceed and when we can talk with Logan.

(Kem Aff. Ex. A.)

On August 27, 2009, Tennant forwarded Clark the requested performance summary, and Clark responded via email that he had "forwarded an invite for next Tues[day, September 8], which is the earlier we are all available to meet." (Kem Aff. Ex. B.)  Clark then followed-up with Kem via email on Friday, September 4, stating: "I just wanted to check with you to see if we are still planning on next Tuesday as the date we are going to proceed with termination." (Kem Aff. Ex. B.)  Kem emailed Clark back that same day: "Yes, the plan is to proceed late Tuesday afternoon as discussed.  I have reviewed with both Trent and Tim K. And have obtained approval from Tim to move forward with a replacement once we notify Teresa." (Kem Aff. Ex. B.)

That following Monday, September 7, 2009, the Labor Day holiday, Gorski injured herself at home when she was painting her house's trimming and an extension ladder she was standing on unexpectedly retracted. (Gorski Dep. 59-60.)  Gorski grabbed onto a rung of the ladder as it retracted and rode it down, which prevented her from falling. (Gorski Dep. 60-61.)  She remained upright when the ladder came to a stop, but "felt banged up" by the jolt, experiencing some pain in her body, through her foot, hand, and neck. (Gorski Dep. 61.)  She describes her injuries as "severe". (Gorski Aff. ¶¶ 18, 19.)  Nevertheless, Gorski opted not to seek immediate medical attention after the incident, but instead took some ibuprofen, iced her sore spots, and laid down to rest. (Gorski Dep. 61-63.)

The next morning, Tuesday, September 8, 2009, Gorski reported to work on time at 8:30 a.m. (Gorski Dep. 64.)  As she worked, however, Gorski's pain increased, particularly in her

neck and upper back. (Gorski Dep. 65.) At some point between 10:00 a.m. and 11:00 a.m., Gorski believed that she could not perform her work duties and she approached Tennant, told her about her accident over the weekend, and asked if she could go to the doctor. (Gorski Dep. 66, 68; Gorski Aff. ¶ 19.) Tennant responded that they were shorthanded and thus she "couldn't really give her permission to leave", and then asked Gorski if she could schedule a doctor visit for after work or another time. (Gorski Dep. 66.) Gorski said "okay" and then returned to her seat. (Gorski Dep. 66-67.)

About fifteen minutes later, however, Gorski sent an instant message to Tennant stating that she thought they needed to talk with Clark because she was "mad" about being asked to wait to go to the doctor due to the department being shorthanded. (Gorski Dep. 68, Ex. 7.) Tennant responded: "I will talk to Eric." (Gorski Dep. 68, Ex. 7.) Tennant then scheduled a conference call for her, Gorski, and Clark at 11:30 a.m. (Gorski Dep. 68, Ex. 7.) She asked Gorski to contact her doctor before the 11:30 conference call to see what appointment times were available that day. (Gorski Dep. 68, Ex. 7.) Gorski, however, did not do so. (Gorski Dep. 69-70.)

During the conference call, Gorski told Clark about the accident, that she was experiencing some pain, and then asked if she could go to the doctor. (Gorski Dep. 70.) Clark responded by asking Gorski if she could go after work or some other time. (Gorski Dep. 70.) Gorski replied that she thought she needed to go right away. (Gorski Dep. 71.) Clark's tone of voice then seemed to turn "a little angry", and he talked about how the department was shorthanded and needed Gorski on the telephones. (Gorski Dep. 71.) Nevertheless, he told Gorski: "Well, if you have to go, you have to go." (Gorski Dep. 71.)

After her conversation with Clark, however, Gorski felt that she would experience

"repercussions" if she went to the doctor that day. (Gorski Dep. 70-75.) Therefore, she called her doctor, explained what her problem was, and asked for an appointment that evening or the next day, September 9. (Gorski Dep. 78.) The doctor scheduled her for a 10:00 a.m. appointment the next day. (Gorski Dep. 77-78.)

Gorski notified Tennant and Clark of her doctor appointment scheduled for 10:00 a.m. on September 9, and Tennant replied that she "was fine with it." (Gorski Dep. 82-84, Ex. 8.) Kem, Clark, and Tennant then decided to delay Gorski's termination that they had originally planned to effectuate later that day to first make sure that she was not suffering from a serious injury. (Clark Aff. ¶¶ 8-9; Tennant Aff. ¶¶ 8-9; Kem Aff. ¶¶ 7-8.) As a result, Gorski worked the remainder of her shift, until 5:00 p.m., on September 8. (Gorski Dep. 80.) Gorski did not seek any medical care that evening. (Gorski Dep. 80.)

The following day, Wednesday, September 9, Gorski reported to work at 8:30 a.m., her normal start time, and then went to her doctor appointment at 10:00 a.m. (Gorski Dep. 81-82.) Gorski saw her family physician, Dr. Waterson, who prescribed some pain medication and told Gorski that he believed her injuries were "muscular and bruises." (Gorski Dep. 85.) He advised her that if she did not feel better within the next few days, she should probably see an orthopaedist. (Gorski Dep. 85.) He did not place Gorski off work. (Gorski Dep. 85.)

Gorski filled her prescriptions and then went back to work, arriving around noon. (Gorski Dep. 85-86.) She reported to Tennant what Dr. Waterson had said, and Tennant responded that it "was fine." (Gorski Dep. 86.) Gorski then resumed her work duties until about 3:00 or 3:30 p.m., when she received an instant message from Clark asking her to come to his office immediately. (Gorski Dep. 87.)

When she arrived at Clark's office, he told her they needed to go over to Kem's office, which they did. (Gorski Dep. 87.) Once they joined Kem in her office, they discussed Gorski's recent accident, and she displayed some of her injuries to them. (Gorski Aff. ¶ 24.) Clark then told Gorski that Medical Protective was terminating her employment. (Gorski Dep. 88-89.) Gorski became upset and asserted that her termination must be because of her doctor visit, but Clark denied this and told her that it was based on her performance.[2] (Gorski Dep. 88-90.) Kem then asked Clark to leave the office, and she offered Gorski a severance package, which Gorski refused, declaring she was "going to fight it." (Gorski Dep. 89-92.)

On Thursday, September 10, 2009, the day after her employment was terminated, Gorski visited a physician's assistant at Orthopaedics Northeast. (Gorski Dep. 101.) He diagnosed her with pulled muscles and gave her a note placing her off work for September 10, 11, and 12. (Gorski Dep. 102-05, Ex. 9.) Neither Orthopaedics Northeast nor Dr. Waterson scheduled Gorski for any type of follow-up care or appointment, and she did not see any other medical provider for her September 7 injuries. (Gorski Dep. 103-04.) At some point later, however, Gorski returned to Orthopaedics Northeast after breaking her foot in an unrelated incident. (Gorski Dep. 104.) At that appointment, the orthopaedist "did just a brief examination" of her bruises and neck and back as a follow-up to her September 7 injuries. (Gorski Dep. 104.)

On October 30, 2009, Gorski filed the instant case in Allen Superior Court, contending that Medical Protective wrongfully denied her substantive benefits of the FMLA and then retaliated against her by terminating her employment. (Docket # 1.) Medical Protective removed

---

[2] Gorski admits that she does not know who actually made the decision to terminate her or when that decision was made. (Gorski Dep. 93.)

the case to this Court on December 14, 2009. (Docket # 3.)

## IV.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## V.  DISCUSSION

The FMLA establishes two categories of protections for employees who need to take reasonable leave for medical purposes. *See* 29 U.S.C. § 2601(b)(2); *King v. Preferred Technical Grp.*, 166 F.3d 887, 891 (7th Cir. 1999).  First, the FMLA grants eligible employees certain "substantive statutory rights." *King*, 166 F.3d at 891.  It "provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month prior for a serious health condition as defined by the [FMLA]." *Id.* (citing 29

U.S.C. § 2612(a)(1); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (collecting cases). "After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed prior to the exercise of the leave." *King*, 166 F.3d at 891 (citing 29 U.S.C. § 2614(a)). "To insure the availability of these guarantees, the FMLA declares it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided.'" *Id.* (quoting 29 U.S.C. § 2615(a)(1)); *see also Kauffman*, 426 F.3d at 884 (collecting cases).

"In addition to these substantive provisions, the FMLA makes it 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" *Kauffman*, 426 F.3d at 884 (quoting 29 U.S.C. § 2615(a)(2)); *see also King*, 166 F.3d at 891. "Similarly, the Act makes it unlawful for any employer to 'discharge' or 'discriminate' against anyone for taking part in proceedings or inquiries under FMLA. *Kauffman*, 426 F.3d at 884 (citing 29 U.S.C. § 2615(b)). The Seventh Circuit Court of Appeals has "construed these last provisions to create a cause of action for retaliation." *Id.* (collecting cases)

Therefore, a claim under the FMLA for wrongful termination can be brought under either an interference/entitlement or discrimination/retaliation theory. *Id.* The difference is that the discrimination/retaliation type of claim requires proof of discriminatory or retaliatory intent, while the interference/entitlement type of claim requires only proof that the employer denied the employee her entitlements under the FMLA. *Id.* (collecting cases).

### A.  Gorski Abandoned Any FMLA Interference/Entitlement Claim,
### and in Any Event, It Fails as a Matter of Law

Though her response brief is a bit unclear, Gorski seemingly concedes any claim that she was wrongfully denied FMLA leave, that is, any interference/entitlement claim, and instead solely argues that she was retaliated against for requesting FMLA leave. (Resp. Br. 7.)  Of course, any issues raised in the summary judgment motion that are not responded to by the non-moving party are deemed abandoned. *See* Fed. R. Civ. P. 56(e)(2); *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (collecting cases).  Therefore, Medical Protective is entitled to summary judgment in its favor on Gorski's FMLA interference/entitlement claim.

Moreover, even if Gorski had not conceded her FMLA interference/entitlement claim, Medical Protective would still be entitled to judgment on it as a matter of law.  To succeed on an interference/entitlement claim, Gorski must prove that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009).  "The burden to prove FMLA interference lies with the plaintiff-employee." *Id*.

Here, as Medical Protective emphasizes, Gorski did not qualify for FMLA leave because she did not suffer from a serious health condition.  A "serious health condition" under the FMLA requires either inpatient care or continuing treatment by a healthcare provider. 29 C.F.R. §§ 825.113-115.  Continuing treatment means "a period of incapacity of *more than* three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition . . . ." 29 C.F.R. § 825.115 (emphasis added).  A "period of incapacity" in

turn, is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

It is undisputed that Gorski did not require inpatient care for her September 7th injuries. Rather, she asserts that she was under "continuing treatment" for her injuries because she was incapacitated "for more than three full consecutive days – Monday (September 7) through Thursday [sic] (September 12)." (Resp. Br. 6.) Gorski, however, admitted facts during her deposition showing that she was not incapacitated for the full day on either September 7, 8, or 9. She testified that her injury did not occur until 6:00 p.m. or 7:00 p.m. on September 7; that she worked the full day on September 8; and that she worked more than one-half of the day on September 9. (Gorski Dep. 62, 63-64.) Indeed, Gorski chose to report for work on September 8 and 9 at her normal time, rather than calling off work. Furthermore, when Gorski visited her family physician, he did not place her off work, and she returned to perform her work duties for the remainder of the day. (Gorski Dep. 85-86.)

After Medical Protective terminated her employment, Gorski saw the physician's assistant at Northeast Orthopaedics, and he placed her off work for *exactly* three days—September 10, 11, and 12. (Gorski Dep. 100, 102-04, Ex. 9.) Because she provides no evidence that her incapacity extended beyond September 12, at most she was incapacitated for a period of just three full, consecutive days, which falls short of satisfying a "period of incapacity" under the FMLA. *See* 29 U.S.C. § 825.113(b); *Sims v. Kroger Co.*, No. 1:07-cv-338-LJM-JMS, 2008 WL 2036909, at *3 (S.D. Ind. May 9, 2008) ("In the Seventh Circuit, . . . a plaintiff must demonstrate the duration of the incapacity lasted more than three consecutive calendar days."

19

(quoting *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499 (7th Cir. 1999)).  Therefore, on this record no reasonable jury could conclude that Gorski suffered from a serious health condition sufficient to qualify her for FMLA leave.

Furthermore, even if Gorski had suffered from a serious health condition and was entitled to FMLA leave, she would still not have been protected from termination as "an employee may be fired for poor performance when she would have been fired for such performance even absent her leave." *Simpson*, 559 F.3d at 712 (quoting *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001)); *see Daugherty v. Wabash Ctr., Inc.*, 572 F. Supp. 2d 1003, 1014 (N.D. Ind. 2008, *aff'd*, 577 F.3d 747 (7th Cir. 2009) (recognizing that an employee may be terminated for poor work performance even while on FMLA leave).  Here, as will be discussed in more detail *infra*, it is undisputed that Kem, Clark, and Tennant, the Medical Protective decision-makers, decided to terminate Gorski's employment *before* she ever incurred her injury on September 7 and asked to go to the doctor.  Consequently, this record bears just one conclusion—that Gorski would have been terminated "even absent her leave." *Simpson*, 559 F.3d at 712.

In sum, on the record presented, no reasonable jury could conclude that Medical Protective denied Gorski substantive rights under the FMLA. *See Haefling*, 169 F.3d at 501 (granting summary judgment to defendant where the evidence of record was insufficient to establish a genuine issue of material fact regarding whether the plaintiff suffered from a serious health condition); *Sims*, 2008 WL 2036909, at *4 (same); *Phillips v. JP Morgan Chase*, No. 06 C 3747, 2007 WL 1266303, at *3-4 (N.D. Ill. Apr. 30, 2007) (same); *Levine v. Children's Museum of Indianapolis, Inc.*, No. IP00-0715-C-H/G, 2002 WL 1800254, at *4-7 (S.D. Ind. July 1, 2002) (same).  Indeed, "[b]y its application to 'serious health conditions,' the FMLA was aimed at

genuinely serious and incapacitating conditions.  It was not intended to mandate, as a matter of federal law, a uniform national sick leave policy for minor or temporary illnesses and discomforts . . . ." *Levine*, 2002 WL 1800254, at *10.

Accordingly, Medical Protective's motion for summary judgment will be granted with respect to Gorski's interference/entitlement FMLA claim.

## B.  Gorski's Claim of FMLA Retaliation Does Not Survive Summary Judgment

Gorski also claims that Medical Protective retaliated against her for exercising her FMLA rights. *See Daugherty*, 577 F.3d at 751; *Kauffman*, 426 F.3d at 884 (explaining that the FMLA makes it unlawful to discharge or discriminate against an employee for taking part in proceedings or inquiries under the FMLA); *King*, 166 F.3d at 891-92 ("[A]n employer may not consider the taking of FMLA leave as a negative factor in employment actions.").  A retaliation claim can proceed under the direct or indirect methods of proof. *Daugherty*, 577 F.3d at 751 (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)).  Gorski argues her case solely under the direct method. (Resp. Br. 9.)

"Under the direct method of proving retaliation, a plaintiff must present evidence of a statutorily protected activity, a materially adverse action taken by the employer, and a causal connection between the two." *Id.* (citing *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)).  "A plaintiff can prevail under the direct method by showing an admission of discrimination or by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Id.* (citations and internal quotation marks omitted).  Here, Gorski concedes that there are no admissions of discrimination (Resp. Br. 9) and instead attempts to construct a convincing mosaic of circumstantial evidence.

Circumstantial evidence is of three general types: (1) suspicious timing, ambiguous statements, or behavior toward other employees; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext for discrimination. *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003).

Gorski's retaliation claim is a non-starter. As concluded *supra*, she has failed to establish that she has a "serious health condition", and thus she cannot establish the first element of her claim—that she engaged in statutorily protected activity. *See, e.g, Campbell v. Cummins, Inc*., No. 4:03-CV-00149DFH-WGH, 2005 WL 775932, at *17 (S.D. Ind. Mar. 25, 2005) (stating that plaintiff failed to establish the first element of her FMLA retaliation claim because there was no evidence that she had a serious health condition or that defendant had notice of any FMLA-qualifying condition).

Moreover, Gorski fares no better when attempting to establish the causation element of her retaliation claim. She argues that the timing of her termination is suspicious in that she was terminated only "after she requested FMLA leave." (Resp. Br. 12.) Adding to this suspicious timing, Gorski emphasizes, is the fact that she viewed her performance reviews as "positive", so much so that she was awarded a raise and a bonus in 2009, and she had never received any prior oral or written warnings about her performance. Gorski asserts that on these facts a reasonable jury could conclude that her request for leave was a "substantial or motivating factor" in Medical Protective's decision to terminate her. *See Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008) ("[Plaintiff] need not prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a

substantial or motivating factor in the employer's decision." (citation and internal quotation marks omitted)).     Gorski's mosaic of circumstantial evidence in support of the causation element, however, is unconvincing in light of the email correspondence among Medical Protective's decision-makers dated August 19 through September 4.  Indeed, these emails definitively indicate that Kem, Clark, and Tennant had already made the decision to terminate Gorski *before* she ever sustained the injury for which she asserts she requested FMLA leave. "Absent knowledge that the FMLA has been previously invoked, there can be no retaliatory intent." *Watkins v. Henderson*, No. IP99-1945-C-B/S, 2001 WL 219807, at *20 (S.D. Ind. Mar. 5, 2001); *see also Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207-08 (11th Cir. 2001) (stating that there can be no causal link between a request for FMLA leave and termination where the decision-maker had no notice of an FMLA request); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him.").  That is, "[n]o FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave." *Kennebrew v. New York City Hous. Auth.*, No. 01 CIV 1654 (JSR)(AJP), 2002 WL 265120, at *19-20 (S.D.N.Y. Feb. 26, 2002) (collecting cases); *Salameh v. Sears Holding Mgmt. Corp.*, No. 08 C 4372, 2010 WL 183361, at *7-8 (N.D. Ill. Jan. 13, 2010) (collecting cases).

Gorski, in a seemingly desperate attempt to salvage her retaliation claim, baldly suggests that "these emails may have been done after the fact" because she had requested the underlying metadata in discovery but Medical Protective failed to provide it. (Resp. Br. 15.)  Gorski, however, never requested a Local Rule 37.1 conference with Medical Protective concerning

production of the metadata, nor did she file a motion to compel the metadata. As a result, she has not a shred of evidence to support her theory, rendering it mere speculation. Of course, "speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). In effect, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citation omitted).

Here, even when taking the evidence in the light most favorable to Gorski and affording her every reasonable inference, no reasonable jury could conclude on this record that Gorski suffered from a "serious medical condition" such that she engaged in a statutorily protected activity, or that her purported request for leave was a substantial or motivating cause of her termination. *See Walker v. Abbott Labs.*, 416 F.3d 641, 645 (7th Cir. 2005) ("[A] litigant is entitled to summary judgment if, should the case go to trial on the record compiled in the summary judgment proceedings, he would be entitled to judgment as a matter of law."); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1573 (7th Cir. 1989) (affirming summary judgment when evidence was so one-sided that a trial would be "an exercise in futility for the plaintiff"). Therefore, Gorski's retaliation claim does not survive Medical Protective's motion for summary judgment.

## VI. CONCLUSION

For the reasons given herein, Defendants' motion for summary judgment (Docket # 20) is hereby GRANTED, and their motion to strike (Docket # 27) is GRANTED IN PART and

DENIED IN PART.  The Clerk is directed to enter a judgment in favor of Defendants and against Plaintiff.

SO ORDERED.

Enter for this 10th day of November, 2010.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge